UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FRANK BRENNA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:03-cv-01101 (WWE) |
| | : | |
| ROBIN WOOD, | : | |
| | : | |
| Defendant. | : | |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This action arises from plaintiff Frank Brenna's claim that defendant Robin Wood violated his rights pursuant to Title 42 of the United States Code, § § 1981, 1983 and 1988, and Article First, § § 7, 9 and 10 of the Constitution of the State of Connecticut. Plaintiff asserts that defendant, a caseworker with the State of Connecticut Department of Children and Families ("DCF"), erroneously deprived him of custody of his two minor children from February 1997 until June 2002. Plaintiff claims that defendant's conduct included misrepresentation, failure to report accurately, improper advocacy, failure to act expeditiously and interference with the reunification of plaintiff with his children. Defendant argues that there was no violation of plaintiff's rights and, in the alternative, that she is entitled to qualified immunity and that summary judgment, therefore, is appropriate.

**BACKGROUND**

In 1996, plaintiff was the noncustodial parent of his two children, Jamie Brenna and Joshua Brenna. At that time, plaintiff was living in New York and the children lived

1

with their mother and stepfather in Connecticut.  In 1996, Joshua complained of repeated instances of sexual abuse perpetrated by plaintiff over the course of several years.  He claimed these acts occurred during visitation with his father.

On August 20, 1996, plaintiff was charged in the State of Connecticut with sexual assault in the first degree and injury to a minor.  Joshua was the alleged victim. On August 29, 1996, DCF completed its investigation of the charges and substantiated plaintiff's sexual abuse of Joshua.

On February 28, 1997, plaintiff was charged in the State of New York with eight counts of sodomy in the first degree, four counts of sexual abuse in the first degree, four counts of aggravated sexual abuse in the second degree, and one count of endangering the welfare of a child.  The alleged victim in the New York case was Joshua Brenna.

During the pendency of these cases, plaintiff was denied access to either of his children.

On or about November 22, 1997, plaintiff was acquitted of all Connecticut criminal charges and, on or about January 24, 1998, he was acquitted of all New York criminal charges.  Thereafter, on March 23, 1998, plaintiff applied for physical custody of his children and the right to visitation.  His case was referred to Family Relations and he was ordered to submit to a sexual offender evaluation.  This evaluation concluded that plaintiff did not possess the characteristics of a sexual offender.

Following these events, defendant was assigned to this matter on September 1, 1998.  She was the DCF treatment social worker for both Joshua and Jamie.  She worked on the case until January 7, 2002.

Beginning in March 1998, DCF received complaints that the mother was abusive towards and neglectful of the children and a neglect petition was filed in the Superior Court for Juvenile Matters on November 17, 1998.  On March 3, 1999, the children were placed in the custody of DCF via a 96 hour hold pursuant to C.G.S. § 17a-101g© and (d) and on March 5, 1999, the Superior Court for Juvenile Matters issued an Order of Temporary Custody, placing the children in the custody of DCF.

On June 2, 1999, the mother and plaintiff appeared at the Juvenile Court to enter pleas on the neglect petition and plaintiff did not contest the petition.  The children were placed in the custody of DCF for one year.  Accordingly, the parents' custody and guardianship rights were removed and placed with DCF.[1]  The children were placed in foster care and Jamie resided in a shelter for a time.

The parties dispute whether the children expressed interest in or aversion to visits with plaintiff.  Plaintiff claims that Jamie repeatedly expressed her desire to visit with him and that she fled the shelter on at least two occasions in the attempt to stay with him.  He claims that DCF continually denied Jamie's requests to be with her father.  Defendants assert that the children told the court-ordered evaluator and their various therapists that they did not wish to see their father.  In turn, the evaluator and therapists reported to DCF that visits with plaintiff were not in the best interests of the children and would be harmful to them.  DCF consequently denied plaintiff's requests.

On May 30, 2000, DCF's custody of the children was extended another year, until June 22, 2001.  Both the mother and plaintiff agreed to this extension.

---

[1] At all times, the children were represented by their own attorney.

Plaintiff and Jamie also agreed to a meeting with Jamie's therapist in order to evaluate whether visits with plaintiff were in Jamie's best interest. In June 2000, the therapist began supervised visits between Jamie and plaintiff. On June 23, 2000, Jamie informed the therapist that she wanted to live with her father.

On July 18, 2000, defendant requested the New York Interstate Compact Office to conduct the required study of plaintiff's home in order to effect Jamie's placement therein. Defendant informed the Office that "[b]ecause of Jamie's indicated interest in living with her father, and Mr. Brenna's desire to have his daughter, absent of any concerns, the Department would like to be able to place Jamie as soon as possible. . . ." (Def.'s Memo, p. 5). However, in August 2000, the court-ordered evaluator submitted a report indicating that it would be "premature" to place Jamie with her father at that time. Defendant informed plaintiff of this development by letter on August 14, 2000. Thereafter, defendant, plaintiff, plaintiff's attorney and Jamie's attorney agreed to a visitation schedule providing for unsupervised visits between Jamie and her father.

On September 12, 2000, Jamie's therapist informed the parties that the reunification process should continue. Accordingly, on September 26, 2000, defendant sent a letter to plaintiff regarding the scheduling of overnight visits. On October 20, 2000, upon receipt of a positive report from the Interstate Compact Office, Jamie was placed with plaintiff. In a letter dated October 25, 2000, defendant informed plaintiff that although he and Jamie had been reunited, DCF remained her guardian until receipt of New York's permission for revocation of same and transfer of guardianship back to plaintiff. On or about March 28, 2001, plaintiff was granted custody of his daughter.

Meanwhile, in December 2000, Joshua recanted his allegations of the sexual

abuse he had claimed to have suffered. Defendant contacted his therapist for her recommendation and, on January 10, 2001, the therapist informed defendant that she wanted a therapeutic session between Joshua and plaintiff, in her office, for the purpose of "a reintroduction between father and son." (Def.'s Memo, p. 7)

On April 12, 2001, plaintiff agreed to an extension of Joshua's commitment to DCF until June 22, 2002.

On April 19, 2001, defendant requested that the Interstate Compact Office of New York conduct the study necessary for Joshua to be placed with plaintiff. In October 2001, after not hearing from New York for six months, defendant requested the court to issue an order that the study be expedited. The court complied. In December 2001, New York granted permission for Joshua to live with plaintiff

On December 11, 2001, plaintiff filed a motion to revoke Joshua's commitment to DCF. In January 2002, the court evaluator recommended that Joshua be placed with his father and sister. On January 7, 2002, defendant left DCF on medical leave and thus terminated her involvement in this case. Thereafter, on January 12, 2002, Joshua was placed with his father and, on June 21, 2002, plaintiff was granted full custody.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which it has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 24.

      I.      **Federal Constitutional Violations**

Plaintiff claims that defendant has violated his federally protected rights pursuant to 42 U.S.C. § § 1981, 1983 and 1988.  The Court disagrees.

"The right to family autonomy and privacy acknowledged in the common law has been recognized as so fundamental as to merit constitutional protection."  Castagno v. Wholean, 239 Conn. 336, 344 (1996).  See Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) ("The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment.") (citations omitted).

However, this right to family integrity is not absolute and the constitutional right to due process may be suspended.  "Where . . . there is an objectively reasonable basis for believing that parental custody constitutes a threat to the child's health or safety,

government officials may remove a child from his or her parents' custody without parental consent or a prior court order." Pace v. Montalvo, 186 F.Supp.2d 90, 98 (D.Conn. 2001).

In the present case, the undisputed facts present reasons supporting the decision to remove the children from parental custody, to deny visitation rights, and to extend state custody.  At the time of the initial denial of plaintiff's right to visitation,[2] Joshua had alleged multiple incidents of sexual abuse at the hands of his father and there was medical evidence that supported this claim.  Later, DCF received reports of abuse and neglect occurring at the mother's home and removed the children from the residence.  At some time after removal, each child expressed his or her wish not to have contact with their father.  The Court finds these facts are sufficient to provide an "objectively reasonable basis" for the removal.

Alternatively, while it is not clear from the complaint which constitutional right plaintiff is claiming defendant violated, there exists no constitutional right to have a child returned to a parent's custody within a specific time period when the child has been removed properly and the social worker is adhering to the mandates of her employment.

Accordingly, the Court will grant defendant's motion for summary judgment as to plaintiff's federal claims.

---

[2]Defendant was not involved in the case at the time of the denial of plaintiff's visitation rights.

7

## II.     Absolute Immunity

Even if the Court were to find that there was a violation of plaintiff's constitutional rights, defendant is entitled to absolute immunity because her actions were consonant with her status as a DCF employee.  While plaintiff concedes that summary judgment is appropriate inasmuch as defendant is entitled to absolute immunity for her statements to the court (Complaint, ¶ 34(A)), he asserts that such immunity is not available to her for her alleged "failure to report accurately" to the court the feelings of the children toward their father (Complaint, ¶ 34(B)) and the children's positions regarding visitation and custody (Id., ¶ 34(C)).  It is unclear in what possible way a "misrepresentation" differs from an inaccurate report.  Consequently, the Court finds that defendant is entitled to absolute immunity for her statements to the court.  The Court will grant defendant summary judgment on this ground.

Furthermore, although the Second Circuit has not yet determined the scope of absolute immunity in the context of child welfare workers, other circuits have done so. In Ernst v. Child and Youth Services of Chester County, 108 F.3d 486 (3d Cir. 1997), the Third Circuit joined the other courts of appeal that have addressed this issue in their holding "that child welfare workers and attorneys who prosecute dependency proceedings on behalf of the state are entitled to absolute immunity from suit for all of their actions in preparing for and prosecuting such dependency proceedings." Id., at 488-89.  These actions, the court concluded, include "the gathering and evaluation of information and professional opinions regarding the relationship between [the parent] and [the child]." Id., at 498.  The Court agrees with the Third Circuit and concludes that defendant is entitled to absolute immunity for all of her actions related to the judicial

8

proceedings in question, to wit: ¶ 34(A), (B) and (C).  Summary judgment is appropriate as to these counts.

### III.	Qualified Immunity

Summary judgment is also appropriate because defendant is entitled to qualified immunity.  It is well established that government officials are entitled to qualified immunity for their discretionary actions performed during the course of their employment.

Qualified immunity shields government officials "whose conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The scope of qualified immunity is broad.  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

The test for qualified immunity is twofold and must be considered in sequence.  The threshold question is whether, taken in the light most favorable to the plaintiff, the facts demonstrate the official's violation of one of the plaintiff's constitutional rights.  The next question is whether that constitutional right was clearly established within the specific context of the case.  In other words, the court must consider whether the constitutional right was clear enough so that a reasonable officer would understand that his actions would violate that right. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).   Thus, "even assuming a state official violates a plaintiff's constitutional rights, the official is protected nonetheless if he objectively and reasonably believed that he was acting lawfully." Luna v. Pico, 356 F.3d 481, 490 (2d

Cir.2004).

As governmental officials, "child protective services workers are entitled to qualified immunity for their conduct during the course of abuse investigations." Wilkinson ex rel. v. Russell, 182 F.3d 89, 99 (2d Cir. 1999).   Wilkinson sets forth the lenient standard to which child protective services workers are held.

> This Circuit has adopted a standard governing case workers which reflects the recognized need for unusual deference in the abuse investigation context.  An investigation passes constitutional muster provided simply that case workers have a "reasonable basis" for their findings of abuse. . . . In applying a reasonableness standard in the abuse context, courts must be especially sensitive to the pressurized circumstances routinely confronting case workers, circumstances in which decisions between "difficult alternatives" often need to be made on the basis of limited or conflicting information.

Id., at 105.

In the instant matter, there were ample reasons for defendant, always acting in the capacity of an employee of DCF, to believe that the safety and well being of plaintiff's children were threatened by continued placement with their father and mother. There had been reports of sexual abuse and neglect prior to DCF's removal of parental custody.  There followed years of meetings with and reports from various therapists and the court-ordered evaluator, all advising that it was not in the best interests of the children to be returned to either parent.  Defendant reported this information to DCF and to the court, both of which ordered that custody of the children be retained by the State.  Neither plaintiff nor the children's mother contested the court's original placement of the children with DCF or the subsequent court-ordered extensions of same.  The Court finds that the reasonableness standard has been met.

As to plaintiff's complaints of defendant's improper handling of the process, the

Court deems her conduct professional throughout. The facts as presented demonstrate defendant's professionalism and prompt attention to the matters involved in the proceedings. She, *inter alia*, maintained contact with the therapists and evaluator; she timely requested the home study to be conducted by the New York Interstate Compact Office and later requested the court to issue an order to expedite the study; she swiftly acted upon reports, evaluations and agreements, apprising plaintiff of all developments.

Plaintiff further argues that defendant relied upon the charges of sexual assault filed against him in both New York and Connecticut – charges of which he was acquitted – as the reason for her failure to return the children to him. There are no facts presented that substantiate this claim.

Because there was ample reason for plaintiff to take all the actions she did, the Court finds that she meets the Wilkinson standard and is entitled to qualified immunity. Defendant's motion for summary judgment, therefore, will be granted on this ground.

### III.    State Law Claims

Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline to exercise its supplemental jurisdiction over plaintiff's state law claims because it has dismissed all claims over which it has original jurisdiction. The Court chooses to decline its supplemental jurisdiction and, therefore, dismisses plaintiff's state law claims.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment [Doc. #50] as to all of plaintiff's claims.

Dated this 8th day of August, 2006 at Bridgeport, Connecticut.

>             _____/s/_____
>             Warren W. Eginton
>             Senior United States District Judge